FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

UNITED STATES DISTRICT COURT FOR THE
~~WESTERN~~ DISTRICT OF ~~WYOMING~~   2018 NOV -5 PM 1: 26

STEPHAN HARRIS, CLERK
CHEYENNE

| CRAIG CUNNINGHAM, Plaintiff, <br><br> v. <br><br> ASI, LLC, Donald Cross, Brixum Beneficial, Gina Bennett, Robert Weiss, AVG Financial, Michael Ashberry, and John/Jane Does 1-5 <br><br> **Defendant** | § § § § § § § § § § | Civil Case No. 18-CV-183-F |

## Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. ASI, LLC is a Wyoming corporation that can be served via Registered agent and corporate officer Donald Cross at 2740 Coulter Ln, Gillette, WY 82716

3. Donald Cross is a natural person and can be served at 2740 Coulter Ln, Gillette, WY 82716.

4. Robert Weiss is a natural person and corporate officer of ASI, LLC and can be served at 2740 Coulter Ln., Gillette, WY 82716.

5. Brixum Beneficial is an Arizona Trade name and legal entity and can be served at 835 W Warner Road ste 101-613 or via corporate officer Gina Bennett 290 W. Windsor Dr., Gilbert, AZ 85233 or 1281 E Marcella Ln Gilbert, AZ 85295.

6. AVG Financial is an Arizona entity that can be served at 2030 West Baseline Road,

ste 182-735 Phoenix, AZ 85041 and can be served via corporate officer Michael Ashberry 722 W Milada Dr. Phoenix, AZ 85041

7. Michael Ashberry is a natural person and owner of AVG Financial and can be served at 722 W. Milada Dr., Phoenix, AZ 85041.

8. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

9. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

10. **<u>Personal Jurisdiction</u>.** This Court has general personal jurisdiction over the defendant because the company is headquarted in Wyoming and the other named corporations have contracted with ASI, LLC to launder money through the ASI's merchant and bank accounts.

11. **<u>Venue</u>.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed originated in Wyoming and the defendants reside in this district or contracted with Wyoming entities to launder money.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. §**

**227**

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code 305.053

25. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

26. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

27. Rachel with Card Services is the bane of the existance of many consumers. These are

calls long since prosecuted by the FTC that make fraudulent, misleading, false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day. ASI, LLC, Donald Cross, Brixum Beneficial, Gina Bennett, Robert Weiss, AVG Financial, and Michael Ashberry are ringleaders of this scam and have called thousands of consumers including the Plaintiff in violation of the TCPA.

28. The calls alleged were placed by or on behalf of Brixum Beneficial, Gina Bennett, AVG Financial, and Michael Ashberry. Michael Ashberry controlled AVG Financial and directed agents of AVG Financial to place illegal robocalls to the Plaintiff in this case without consent and not related to any emergency purpose as alleged in this complaint. . Gina Bennett controlled Brixum Beneficial and directed agents of Brixum to place calls to the Plaintiff's cell phone without consent and not related to any emergency purpose as alleged in this complaint.

**ASI, LLC, Donald Cross, and Robert Weiss TCPA violations**

29. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of ASI, LLC, Donald Cross, Brixum Beneficial, Gina Bennett, Robert Weiss, AVG Financial, and Michael Ashberry.

30. From May 2017 through July 2017, the Plaintiff recieved multiple calls from multiple spoofed or non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or any consent provided by the Plaintiff.

31. An example of a pre-recorded message was *"We have made several attempts to reach*

*you. This is your final courtesy call before we are unable to lower your credit card interest rates. Press 1 to speak to the member services department or press 2 and your eligibility to lower your rates will expire"* This call was from 800-945-2000, which is actually the phone number for Chase Bank to 615-348-1977 on 5/3/2017

32. In total, the Plaintiff received at least 17 calls by or on behalf of ASI, LLC, Donald Cross, Brixum Beneficial, Gina Bennett, Robert Weiss, AVG Financial, and Michael Ashberry.

33. On May 4, 2017, the Plaintiff had a charge appear on his credit card from ASI, LLC in the amount of $1,295 for the card ending in 5015 (See Screenshot Ex A). The Plaintiff never authorized this charge by ASI, LLC and never spoke or interacted with anyone associated with ASI, LLC before the charge was made. The $1295 charge corresponds to an amount the individuals with "card services" claimed to charge the Plaintiff, on a telephone call on 5/12/2017 which links the calls to the charge from ASI, LLC.

**Alleged Calls**

| Date | CID | Calls to 615-348-1977 |
|---|---|---|
| 05/03/2017 | 800-945-2000 | |
| 05/09/2017 | 916-581-2626 | |
| 05/12/2017 | 888-907-1285 | |
| 05/12/2017 | 888-907-1285 | |
| 05/12/2017 | 888-907-1285 | |
| 05/15/2017 | unknown | |
| 05/16/2017 | 888-907-1285 | |
| 05/16/2017 | 888-907-1285 | |
| 05/16/2017 | 888-907-1285 | |
| 05/30/2017 | 855-858-0707 | |
| 06/08/2017 | 855-858-0707 | |
| 06/13/2017 | 855-858-0707 | |
| 06/13/2017 | 855-858-0707 | |
| 06/14/2017 | 855-858-0707 | |
| 06/24/2017 | 800-945-2000 | |

| 07/17/2017 | 855-858-0707 |
|---|---|
| 07/26/2017 | 855-858-0707 |

34. On 5/5/2017, the Plaintiff called 307-680-0541 a number associated with ASI, LLC and spoke directly with Donald Cross regarding the charge on his credit card. Donald indicated that *"We use the telemarketers and they do a lot of different things. They do reduction of credit card fees. They do timeshares... We just use some telemarketers and they basically bill through us."* Indicating his knowledge of the telemarketers placing calls on behalf of ASI, LLC for debt relief services.

**ASI, LLC, Donald Cross, and Robert Weiss knowing and Willful Telemarketing regulation violations**

35. On information and belief, Donald Cross, Robert Weiss, and ASI, LLC and did not have a written do-not-call policy while it was sending calls to Mr. Cunningham.

36. On information and belief, Donald Cross, Robert Weiss, and ASI, LLC did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

37. Calls on behalf of Donald Cross, Robert Weiss, and ASI, LLC did not provide Mr. Cunningham with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

38. Each and every call placed on behalf of and for the benefit of Donald Cross, Robert Weiss, and ASI, LLC .

39. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

40. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from Donald Cross, Robert Weiss, and ASI, LLC consumed part of

this capacity.

41. No emergency necessitated the calls

42. Each call was sent by an ATDS.

**Donald Cross and Robert Weiss' Control over ASI, LLC ,, Including its Illegal Robocalling and Telemarketing**

43. At all times relevant to the claims alleged herein, Donald Cross and Robert Weiss, and were the only corporate officers and executive in charge of ASI, LLC . Each and every call was placed on behalf of the corporate entites owned by Donald Cross, and Robert Weiss.

44. Donald Cross and Robert Weiss were aware that ASI, LLC was sending automated, telemarketing text messages en masse to people, including Plaintiff, who had not requested to be contacted by ASI, LLC

45. As ASI, LLC's, senior-most executive, Donald Cross and Robert Weiss had the power to stop these spam campaigns.

46. As ASI, LLC's, senior-most executive, Donald Cross and Robert Weiss had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

47. Instead, Donald Cross and Robert WEiss allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

**Violations of the Texas Business and Commerce Code 305.053**

48. The actions of Donald Cross and Robert Weiss and ASI, LLC, violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone

which violate 47 USC 227(b). The calls by Donald Cross and Robert Weiss and ASI, LLC, and his entities violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5).

49. The calls by Jeff Lakes violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and ASI, LLC's name in the solicitations.

## III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendant ASI, LLC, Donald Cross, Brixum Beneficial, Gina Bennett, Robert Weiss, AVG Financial, Michael Ashberry, , LLC, jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 17 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G. An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

*Craig Cunningham*
Plaintiff,

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075

October 31, 2018

Case 2:18-cv-00183-NDF   Document 1   Filed 11/05/18   Page 14 of 15   exA





**Working Capital for Your Business**

Phone: (888) 965-5700      18201 Von Karman Ave, Suite 330      Fax: (888) 600-1475
Irvine, CA 92612

### Who Are We?

Since 2002, Cornerstone Funding has provided capital solutions to businesses of every type in all 50 states from its headquarters in Irvine, CA. Through common sense underwriting and straightforward business practices, we proudly maintain one of the largest portfolios of business loans in the private sector.

### How Does It Work?

We know that no two businesses are exactly alike, and we will customize all proposals to your company's specific needs and qualifications. Our financial products fit into several categories:

1) **Working Capital** – Typically used for expansion, remodeling, purchasing inventory, advertising or paying personal debt taken for the business. Terms range from 6-36 months and can be structured with fixed payments or revenue payments.
2) **Line of Credit** – Used for smaller projects and temporary cash crunches. Lines of credit are a great tool for any business owner. You choose how much of your line to take, and only pay for the funds you use.
3) **Collateral financing** – Used to acquire new equipment or borrow against assets already owned. These programs are typically structured for 2-7 years and payments are made by fixed monthly payments.

### How Do I Get Started?

There's no cost or obligation to find out what you qualify for. Our team understands that securing financing can be a stressful experience, so we strive to make the process efficient and painless. Generally, it only takes a few hours to have an underwriting decision. We can put funds into your account as quickly as 1 business day after approval.

**Call (888) 965 – 5700 to speak with our funding department!**